IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY M. SESAY, et al.                :

  v.                                    :  Civil Action No. DKC 18-1397

UNITED STATES OF AMERICA, et al.        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this immigration case is the motion to dismiss filed by Defendants United States of America, William P. Barr, Kirstjen Nielsen, Michael R. Pompeo, Maria E. Brewer, and Jane Doe ("Defendants").[1] (ECF No. 4). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I. Factual Background**

The complaint alleges the following facts. Plaintiff Mabinty Sesay ("Ms. Sesay") is the biological daughter of Plaintiff Anthony M. Sesay ("Mr. Sesay"). (ECF No. 1, at 1). Mr. Sesay is a naturalized citizen of the United States residing in Maryland; Ms. Sesay is a citizen of Sierra Leone and resides there. On October

---

[1] Pursuant to Fed.R.Civ.P. 25(d), William P. Barr, the current United States Attorney General, has been substituted for the former Attorney General Jefferson B. Sessions III, and Maria E. Brewer, the current U.S. Ambassador to Sierra Leone, has been substituted for the former Ambassador John Hoover.

14, 2016, Mr. Sesay filed a family-petition (Form I-130) with the Department of Homeland Security, United States Citizenship and Immigration Services, on behalf of Ms. Sesay so that she could immigrate to the United States. After the petition was approved, Ms. Sesay completed a DS-260 form which requires detailed personal information and supporting documents, including a passport and birth certificate. On November 14, 2017, Ms. Sesay was interviewed at the U.S. Consulate in Freetown, Sierra Leone. During the interview, the consular officer accused Ms. Sesay of lying about her age. After the interview, Ms. Sesay received a letter stating that her application would remain pending until she provided "proof of age." Ms. Sesay submitted further documents pertaining to her age on December 11, 2017, including: (1) a formal letter from Sierra Leone Ministry of Health and Sanitation, Birth and Death Office, to confirm the authenticity of her birth certificate; (2) a letter from the hospital where Ms. Sesay was born, confirming their records match her birth certificate; (3) a letter from Ms. Sesay's secondary school, confirming their records match Ms. Sesay's birth certificate; and (4) Ms. Sesay's school transcripts for the 2015-16 and 2016-17 school years. After a delay in processing, Plaintiffs filed a lawsuit in this court on April 17, 2018, for declaratory judgment and writ of mandamus to compel Defendants to render a decision of Ms. Sesay's visa application.

*Sesay v. United States*, Civil Action No. TDC-18-01112 (D.Md. Apr. 17, 2018, ECF No. 1). While that case was pending, counsel communicated regarding the status of Ms. Sesay's visa application. Defendants' counsel confirmed that Ms. Sesay's visa had been refused in November 2017 under INA § 221(g) for administrative processing. Defendants' counsel further asserted that in December 2017, Ms. Sesay was asked to provide her National Primary School Examination ("NPSE") and Basic Educational Certificate Examination ("BECE") school test results. Both counsel then learned that Ms. Sesay had not taken those tests because she was behind in school, resulting in the request to provide "proof of age." On May 10, 2018, Plaintiffs informed the court of their intent to file a motion for temporary restraining order ("TRO"), and the court scheduled a telephone conference for May 11, 2018. Defendants' counsel then informed Plaintiffs' counsel that the consular officer denied Ms. Sesay's visa application under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), which prohibits the issuance of a visa to a person "who, by fraud or willfully misrepresenting a material fact, seeks to procure a . . . visa[.]" Plaintiffs asked for a factual basis to support this denial, but claim they did not receive a response. On May 11, 2018, Ms. Sesay was asked to come to the Consulate on May 14, 2018, with a copy of the denial letter and her passport, in order to receive,

3

personally, a copy of the May 8, 2018 refusal letter. Also on May 11, counsel participated in a conference call with the court during which Plaintiffs' request to file a motion for a TRO was granted. Later that day, Defendants submitted an affidavit to the court from a U.S. Department of State employee asserting that the Consular Consolidated Database reflected that Ms. Sesay's visa was denied under § 1182(a)(6)(C)(i) for material misrepresentation and "presenting a passport in a false identity." (ECF No. 4-1, at 18). Plaintiffs then inquired whether Ms. Sesay's passport could be reconsidered during the scheduled May 14, 2018 visit, under 22 C.F.R. § 42.81(e). Ms. Sesay returned to the Consulate on May 14, 2018. The receptionist denied her an appointment because all information she was required to pick up had already been sent to her. Because Ms. Sesay's visa application had been denied, Plaintiffs voluntarily dismissed the mandamus action on May 14, 2018.

Just before dismissing the mandamus case, Plaintiffs filed this case, seeking judicially mandated reconsideration of Ms. Sesay's visa denial, among other related relief. (ECF No. 1). Defendants filed a motion to dismiss on July 16, 2018. (ECF No. 4). Plaintiffs responded on July 31, 2018, (ECF No. 5), and Defendants replied on August 10, 2018, (ECF No. 6).

## II. Analysis

Defendants frame their argument in terms of both "subject matter jurisdiction" and, in the alternative, whether normal subject matter jurisdiction is overcome by the doctrine of consular nonreviewability. This subtle difference was discussed in *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009):

> The Supreme Court has cautioned that the term "jurisdiction" is often used imprecisely, *see Kontrick v. Ryan*, 540 U.S. 443, 454–55 [] (2004). We do not believe that traditional subject matter jurisdiction is lacking in this case. The Plaintiffs allege that the denial of Ramadan's visa violated their First Amendment rights, and subject matter jurisdiction to adjudicate that claim is clearly supplied by 28 U.S.C. § 1331. *See Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986) ("The district court had subject matter competence in this case [involving visa denials] under both its general federal question jurisdiction, *see* 28 U.S.C. § 1331 (1982), and its specific jurisdiction over claims arising under the Immigration and Nationality Act, *see* 8 U.S.C. § 1329 (1982) [repealed]"), *aff'd by an equally divided court*, 484 U.S. 1 [](1987); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 557 (2d Cir. 1975) (noting that [*Kleindienst v.* ]*Mandel*[, 408 U.S. 753 (1972)] considered "an alleged violation of First Amendment rights of American citizens over which the federal courts clearly had jurisdiction") (emphasis added). Perhaps the doctrine of consular nonreviewability, where applicable, means that the generally available federal question jurisdiction provided by section 1331 to adjudicate First Amendment claims is withdrawn where the claim is based on a consular officer's denial of a visa, or that prudential considerations, perhaps arising from

5

> separation of powers concerns, counsel against
> exercising normally available jurisdiction.

Regardless of its label, the doctrine of consular nonreviewability prohibits judicial review of a consular officer's decision to grant or deny a visa to foreign nationals. *See, e.g.*, *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (finding that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). As explained by Justice Kennedy in his concurring opinion in *Kerry v. Din*, 134 S.Ct. 2128, 2140 (2015), the Court held, in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), "that an executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made 'on the basis of a facially legitimate and bona fide reason.' Once this standard is met, 'courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against' the constitutional interests of citizens the visa denial might implicate." (internal citations omitted). "Absent an affirmative showing of bad faith on the part of the consular officer . . . *Mandel* instructs us not to 'look

behind' the Government's exclusion . . . for additional factual details[.]" *Id.* at 2141 (Kennedy, J., concurring).[2]

Plaintiffs contend that both Mr. Sesay and Ms. Sesay have viable constitutional claims, and the consular officer's decision was not based on a facially legitimate and bonafide reason. Defendants argue in parallel that neither Mr. Sesay nor Ms. Sesay have viable constitutional claims, and the decision to deny Ms. Sesay's visa was facially legitimate and bonafide.

A. **Constitutional Rights**

Plaintiffs argue that the doctrine of consular nonreviewability does not bar their claims because the complaint raises allegations that the rights of both Mr. Sesay, a U.S. citizen, and Ms. Sesay, a citizen of Sierra Leone, were violated by the consular officer's decision.[3] Plaintiffs specifically state:

> [1] Defendants' actions (or lack thereof) unlawfully infringe upon [Mr. Sesay's] liberty

---

[2] The parties and some jurists consider Justice Kennedy's concurrence in *Din* to be "controlling." *See, e.g., Trump v. Hawaii*, 138 S.Ct. 2392, 2440 (2018)(Sotomayor, J., dissenting). At least one court has recently expressed doubt on the wisdom of that conclusion, *Yafai v. Pompeo*, 912 F.3d 1018, 1027 n.7 (7th Cir. 2019). The resolution of this case does not turn on that point.

[3] Plaintiffs' alternate argument that the consular nonreviewability doctrine does not apply because it is unclear that a consular officer made the ultimate inadmissibility decision is unavailing. First, the declaration of U.S. Department of State employee Stacy Saravia states that "[t]he Consular Consolidated Database reflects that the consular officer refused the immigrant

7

> interest to make personal choices with regard to family matters free from unjustifiable government interference in violation of his right to substantive due process guaranteed by the Fifth Amendment [to] the United States Constitution.
>
> [2] Defendants' actions (or lack thereof) unlawfully infringe upon [Ms. Sesay's] interest in having her immigrant visa application adjudicated in a manner consistent with her constitutional equal protection interests, as well as her subsequent right to vote as a U.S. citizen should her application [be] adjudicated fairly and in accordance with provisions of the law, and she gets the chance to enter the U.S. prior to her 18th birthday.

(ECF No. 1 ¶¶ 67-68). Defendants argue that Ms. Sesay, as a citizen of Sierra Leone, has no constitutional right which affords her protection. Plaintiffs cite no authority to the contrary. Defendants also argue that Mr. Sesay's Fifth Amendment right does not trigger *Mandel*'s "facially legitimate and bonafide" exception to the consular nonreviewability doctrine; Plaintiffs counter that it is not necessary to prove a violation of Mr. Sesay's constitutional rights for the exception to apply.

Under the Court's decision in *Mandel*, where an American plaintiff alleges a burden to a viable constitutional right,

---

visa application[.]" (ECF No. 6-1, at 2-3). Second, the Supreme Court's holding in *Mandel* "is plainly stated in terms of the power delegated by Congress to 'the Executive.' The Supreme Court said nothing to suggest that the reasoning or outcome would vary according to which executive officer is exercising the Congressionally-delegated power to exclude." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 n.1 (9th Cir. 2008).

through a visa denial to a non-citizen, a facially legitimate and bonafide inquiry may be appropriate. If no viable constitutional right is alleged, the claim will be dismissed. It is far from clear that a substantive, or procedural, due process right attaches to an American's association with his or her child. For example, the Fourth Circuit refused "to recognize a substantive due process claim arising from the deprivation of the love and support of a family member" in *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) (citations omitted). In *Kerry v. Din*, 135 S.Ct. 2128 (2015), the Court considered, but did not decide, whether a procedural due process right applied to spousal separation and failed to reach consensus. *Id.* at 2139 (Kennedy, J., concurring) ("Today's disposition should not be interpreted as deciding whether a citizen has a protected liberty interest in the visa application of her alien spouse."). Although the Court disagreed on whether a procedural due process right applied to spousal separation in *Din*, Justice Kennedy assumed that Din's rights were burdened directly by the visa denial and applied *Mandel*'s "facially legitimate and bonafide" standard. Here, too, it is not necessary to determine whether Mr. Sesay has asserted a viable constitutional claim. Instead, even if Mr. Sesay's rights were burdened directly by the

9

visa denial, the reasons given by the Government satisfy *Mandel*'s "facially legitimate and bonafide" standard, as will be discussed.

Ms. Sesay cannot, however, assert any viable right. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see*, *e.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) (Fifth Amendment's protections do not extend to aliens outside the territorial boundaries). Ms. Sesay has no constitutional right to enter the United States as an unadmitted and nonresident alien. *Mandel*, 408 U.S. at 762 ("It is clear that [Plaintiff] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise."). Ms. Sesay also has "no constitutional right to a visa, [she] is what the organizational plaintiffs in *Mandel* called a 'symbolic' plaintiff." *Am. Acad. of Religion*, 573 F.3d at 117 (quoting *Mandel*, 408 U.S. at 762) (internal citation omitted). Thus, while it is permissible for Ms. Sesay to join Mr. Sesay as a symbolic plaintiff, the analysis of whether the consular's decision was facially legitimate and

bonafide is limited to the alleged impairment of Mr. Sesay's rights through the exclusion of Ms. Sesay. *Mandel*, 408 U.S. at 762.

**B. Facially Legitimate Reason for Visa Denial**

Plaintiffs allege that the consular officer's decision denying Ms. Sesay's visa was not legitimate or bonafide because there was no reasonable basis to believe that Ms. Sesay misrepresented her true age.[4] Defendants rely on the Court's decision in *Din* and argue that the visa denial was facially legitimate because the consular officer cited § 1182(a)(6)(C)(i), a valid inadmissibility provision. Under this statute, the consular officer found that Ms. Sesay made material misrepresentations about her true age.

Justice Kennedy opined that an action is "facially legitimate" if there is a valid reason for it on the face of the action. *Din*, 135 S.Ct. at 2140-41 (Kennedy, J., concurring). Citation to a specific statutory provision may or may not be sufficient, depending on the circumstances. In *Mandel*, the Court remarked:

> [T]he Attorney General did inform Mandel's counsel of the reason for refusing him a waiver. And that reason was facially legitimate and bona fide. The Government has chosen not to rely on the letter to counsel

---

[4] Plaintiffs also quote language from the dissenting opinion in *Din* and the Ninth Circuit's reversed opinion below, erroneously maintaining that the quotations are found within Justice Kennedy's concurrence.

11

> either in the District Court or here. The fact remains, however, that the official empowered to make the decision stated that he denied a waiver because he concluded that previous abuses by Mandel made it inappropriate to grant a waiver again. With this, we think the Attorney General validly exercised the plenary power that Congress delegated to the Executive by [§§] 212(a)(28) and (d)(3).

*Mandel*, 408 U.S. at 769.

Here, the consular officer cited to § 1182(a)(6)(C)(i), indicating that the denial rested on a determination that Ms. Sesay did not satisfy the statute's requirements. The "consular officer requested additional documents from the visa applicant[,] [and] the consular section received additional documents from the visa applicant[.]" (ECF No. 4-1, at 17-18). Upon review of the additional documents, "the consular officer refused Ms. Sesay under [§ 1182(a)(6)(C)(i)], for having made a material misrepresentation to obtain a visa by misrepresenting her age and presenting a passport in a false identity." (*Id.*). Thus, the consular official provided more than a mere citation to an inadmissibility provision. For these reasons, the Government has provided Ms. Sesay with a facially legitimate reason for denying her visa application.

### C. Bonafide Reason for Visa Denial

Plaintiffs allege that the consular officer's decision to deny Ms. Sesay's visa application was made in bad faith:

> Defendants' conduct throughout the visa application process[,] during and after [the] interview[,] show a consistent pattern of acting in bad faith: they threatened [Ms. Sesay] during the interview to say that she is over 18 years old. Then they wasted time in adjudication of her case, so that she reaches 18 and loses the citizenship benefit, and when she filed the lawsuit, they denied her visa application on bogus grounds.

(ECF No. 5, at 13). Defendants maintain that the consular officer's decision was not made in bad faith because "[b]ased on the totality of the information available, the consular officer refused [Ms. Sesay's visa application] under . . . 8 U.S.C. § 1182(a)(6)(C)(i), finding that [Ms. Sesay] made material misrepresentations about her true age." (ECF No. 4-1, at 12). Defendants further argue that their decision was not based on retaliatory motives because "Plaintiffs received the very adjudication they sought (even if it was not the outcome for which they hoped)." (ECF No. 6, at 11).

#### 1. Bad Faith Threats

Plaintiffs allege that the consular officer refused Ms. Sesay's visa and demanded that she admit to being nineteen, rather than seventeen, years old. According to Plaintiffs, the distinction was significant because Ms. Sesay would automatically

become a "U.S. citizen, the day she enters the United States with her immigrant visa, as long as she is still under [eighteen] years old," and that if "she arrives in the United States after her [eighteenth] birthday, she will be a U.S. permanent resident and [have] to wait [five] years before she would be qualified for naturalization." (ECF No. 1, at 2). Plaintiffs maintain that this distinction is important because a U.S. citizen can exercise the right to vote, apply for government jobs, and is not subject to deportation. Ms. Sesay was accused of lying during the consular interview, told to provide further proof of her age, provided additional documents, and subsequently denied a visa for "material misrepresentations about her true age." In coming to this conclusion, the consular officer reviewed Ms. Sesay's birth certificate, supporting letters, and school transcripts. Given the Executive's discretionary power in immigration matters, the tangential consequences of a visa denial and unclear allegations enumerated by Plaintiffs do not plausibly allege a claim of bad faith with sufficient particulariy.

**2. Bad Faith Retaliation**

Plaintiffs argue that "[a]lthough the decision did not come immediately after . . . filing [the] mandamus complaint, the fact that it came after an email that communicated intent to proceed

14

with litigation shows that the denial was retaliatory." (ECF No. 5, at 15). Defendants maintain that:

> By their nature, petitioners file mandamus actions in the visa context when a petitioner alleges a visa application has remained unadjudicated for longer than the petitioner thinks appropriate, and such petitioners file such actions to compel adjudication of the application. As a logical matter, there is no reason to infer retaliation when a defendant takes the very action a petitioner is requesting. Moreover, when a petitioner alleges that a defendant owes her a duty to perform a particular action, as required for a mandamus petition under 28 U.S.C. § 1361, it stands to reason that such action is forthcoming, and should be forthcoming, such that there is no reasonable basis to attribute the action to the filing of the mandamus petition.

(ECF No. 4-1, at 14). The current facts do not support a claim of retaliation where Defendants take the very action Plaintiffs seek. "The . . . mandamus petition, after all, demanded action—that the State Department act on [Plaintiff's] pending visa application[.] That the Department thereupon acted does not signal retaliation." *Saleh v. Tillerson*, 293 F.Supp.3d 419, 431 (S.D.N.Y. 2018) (internal citations omitted). For these reasons, Defendants provided Plaintiffs with a facially legitimate and bonafide reason for denying Ms. Sesay's visa.

    **D. Reconsideration of Visa Denial**

Plaintiffs also argue that the consular office is compelled to reconsider Ms. Sesay's visa application and that this court is

required to hold an evidentiary hearing. "It is well settled that aliens seeking admission to the United States cannot demand that their applications for entry be determined in a particular manner or by use of a particular type of proceeding[.] For those aliens, the procedure fixed by Congress is deemed to be due process of law." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1161 (D.C. Cir. 1999) (citing *Shaughnessy*, 338 U.S. 537; H.R.REP. NO. 87-1086, at 31-32 (1961)); *see also Din*, 135 S.Ct. at 2140 (Kennedy, J., concurring). Defendants instruct Plaintiffs "that, to trigger reconsideration [of Ms. Sesay's visa denial], Plaintiffs must submit [the additional affidavits and letter from the immigration department filed in this action] to the consular post." (ECF No. 6, at 3). "If Plaintiffs submit the additional documentation directly to the consular post, should the consular officer determine that such documentation constitutes 'further evidence tending to overcome the ground of ineligibility,' the consular officer will reconsider the earlier refusal." (ECF No. 6, at 5); *see also* (ECF No. 4-1, at 20) ("You are eligible to seek a waiver of the grounds of ineligibility."); *Din*, 135 S.Ct. at 2145 (Breyer, J., dissenting) ("Properly apprised of the grounds for the Government's action, [Plaintiff] can then take appropriate action— whether this amounts to an appeal, internal agency review, or (as is likely here) an opportunity to submit additional evidence and

obtain reconsideration[.]"). Plaintiffs' may seek reconsideration through the alternate channels fixed by Congress. Thus, Plaintiffs' request for an evidentiary hearing and reconsideration of visa application are denied.

### III. Conclusion

For the foregoing reasons, the motion to dismiss (ECF No. 4) filed by Defendants United States of America, William P. Barr, Kirstjen Nielsen, Michael R. Pompeo, Maria E. Brewer, and Jane Doe will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge